**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**ONE ASSORTMENT OF SEVEN FIREARMS, Defendant–Appellee.**

No. 78–1836.

United States Court of Appeals,
Fifth Circuit.
Unit B

Dec. 18, 1980.

---

Lynell N. Staton, Dept. of Justice, Washington, D. C., Robert Targ, Asst. U. S. Atty., Miami, Fla., for plaintiff–appellant.

Sheldon "Skip" Taylor, Miami, Fla., for defendant–appellee.

Before HILL, KRAVITCH and HATCHETT, Circuit Judges.

JAMES C. HILL, Circuit Judge:

The government appeals from a district court's refusal to order a forfeiture of the defendant firearms under 18 U.S.C. § 924(d) (1976). We agree with the government and accordingly, reverse and remand the case.

## I.

In January 1977, Rafael A. Martinez, a special agent with the U. S. Treasury Department's Bureau of Alcohol, Tobacco and Firearms, entered the Hialeah Range and Gun Shop, Inc., in Hialeah, Florida, to purchase firearms. A salesman in the shop, Joe Rafael DePrado, knew from a prior transaction that Martinez was not a Florida resident.[1] Martinez informed DePrado that he wanted to purchase more firearms to take back to Colombia. Later, Martinez returned to the shop with a Dade County detective whom he introduced as his brother-in-law. The detective executed the proper forms, which required the signature of a Florida resident, for the purchase of three firearms. Martinez placed a $100.00 deposit with the shop and was to return with the detective to pay the balance and take delivery. On January 19, 1977, when the three–day waiting period for firearms purchase expired, Martinez returned to the shop alone. At that time, he chose four more firearms for which DePrado began

---

1. DePrado had been told at the time of the prior transaction, December 2, 1976, that Martinez was a resident of Colombia, South America. Martinez was, in fact, a resident of Puerto Rico.

the necessary paperwork.[2] Prior to the consummation of any sale of weaponry, and prior to any transfer of possession, additional government agents entered the shop with a search warrant and seized all seven weapons.

## II.

The government filed this in rem forfeiture action pursuant to 18 U.S.C. § 924(d) (1976)[3] and alleged that the assortment of firearms seized was used in violation of statutes forbidding, with certain irrelevant exceptions, weapon transfer to a person whom the transferor knows or has reasonable cause to believe resides in a state other than that of the transferor.[4] *See* 18 U.S.C. §§ 922(a)(5), (b)(3) (1976). In its final judgment of April 5, 1978 the district court denied the government's prayer for forfeiture and ordered the government to return the defendant firearms to the Hialeah Range and Gun Shop, Inc. The district court clearly recognized[5] the substance of the transaction, *i. e.*, an attempt to sell weaponry to a nonresident by means of a strawman resident signatory. The district court, however, held that § 924(d) forfeiture was proper only when there existed an underlying statutory firearms violation.

While the facts of this case reveal an intent to violate § 922 by selling to a nonresident, the district court noted that the actual sale and hence violation never occurred. The government noticed a timely appeal of the April 5, 1978 final judgment, and obtained from the district court a stay pending our resolution of the case.

## III.

At the very heart of this appeal lies 18 U.S.C. § 924(d) (1976). That statute subjects to seizure "[a]ny firearm . . . involved in or used or *intended to be used in,* any violation of the provisions of this chapter . . . or any violation of any other criminal law of the United States . . . ."[6] *Id.* (emphasis added). The district court seemed to view this section in two alternative lights. First, it regarded "intended to be used in" as suggesting *actual* use of a weapon in the commission of crime. Second, the court held that no violation had occurred because the two sales were never completed. We reject both of these interpretations as unreasonably narrow constructions of the statutory language.

While case law is somewhat sparse on this issue, several courts have considered

---

**2.** DePrado, when asked on direct examination whether he had begun the paperwork on the four additional firearms, was unable to recall. Record, Vol. II, at 107. On cross-examination, however, DePrado's memory was apparently refreshed when he was shown the forms involved. *Id.* at 114. Although the district court did not specifically address this point in its April 5, 1978 session, we assume this fact is not in dispute. Unfortunately, because of the low dollar amount in controversy, the defendant firearms was unrepresented on appeal.

**3.** The subsection provides, in pertinent part, that:

> (d) Any firearm or ammunition involved in or used or intended to be used in, any violation of the provisions of this chapter [44—FIREARMS] or any rule or regulation promulgated thereunder, or any violation of any other criminal law of the United States, shall be subject to seizure and forfeiture . . . .

18 U.S.C. § 924(d) (1976).

**4.** The government's complaint also alleged violation of 18 U.S.C. § 922(m) (1976), which deems it "unlawful for any . . . licensed dealer

... to make any false entry in, to fail to make appropriate entry in, or to fail to properly maintain, any record which he is required to keep pursuant to section 923 [LICENSING] of this chapter or regulations promulgated thereunder." This allegation, however, has not been pursued on appeal.

**5.** In its findings of fact and conclusions of law, announced in open court on the day judgment was entered, the district judge stated:

> The evidence is clear that the gun dealer, through his agent, intended to sell these firearms to this [government special] agent, knowing that the agent was not a resident of Florida.
>
> The facts are that the [government special] agent produced a *resident of Florida to sign* the appropriate forms in the agent's place so as to satisfy the dealer that the form would show that it was not sold to an out-of-state resident . . . but that the weapons were, in fact, sold to a resident of Florida.

Record, Vol. III, at 160.

**6.** Section 924(d) is set out more expansively in note 3 *supra.*

the extent to which a potential violation must have ripened to suffice under the "intended to be used in" language of § 924(d). *See United States v. Eighty–Six Firearms and Twenty–Two Rounds of Ammunition,* 623 F.2d 643, 644–45 (10th Cir. 1980); *United States v. Twenty–Six Firearms,* 485 F.Supp. 549, 551 (W.D.Pa.1980); *United States v. One Assortment of 12 Rifles and 21 Handguns,* 313 F.Supp. 641 (N.D.Fla. 1970). We read that language to encompass an intent to violate: (1) any provision of Chapter 44, Title 18; (2) any rule or regulation promulgated thereunder; or (3) any criminal law of the United States. Quite clearly, under our construction of the statute, forfeiture of firearms may be ordered in cases, as this one, in which the government shows and the district court finds an intent to violate § 922. But the statutory provision does contain limiting language. The firearms, to be subject to forfeiture, must be reasonably identified to the violation, or in this case, to the sale. By holding that identification is a necessary indicator of intent, we give meaning to the words "intended to be used in . . . any violation," while ensuring that portions of a firearm dealer's inventory that are unrelated to a given violation are not swept away by enforcement officers.

## IV.

The defendant firearms are subject to forfeiture under 18 U.S.C. § 924 (1976) for the reasons we have set out. The district court's final judgment of April 5, 1978 is reversed and the case is remanded for proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.